IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:12-CV-259-D

| | | |
|---|---|---|
| LAUREN MARIE GRIFFIN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE # 17 & 20] pursuant to Fed. R. Civ. P. 12(c). Plaintiff Lauren Marie Griffin ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for Supplemental Security Income ("SSI") payments under 42 U.S.C. § 1381a. The parties have fully briefed the issues and the case is now ripe for decision. This matter was referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's motion be allowed, the Commissioner's motion be denied, and this case be remanded to the Commissioner for further proceedings.

## STATEMENT OF THE CASE

Claimant protectively filed an application for SSI on October 10, 2008, alleging a disability onset date of September 15, 2008. (Tr. 28, 153-59.) The application was denied initially and upon reconsideration, and a request for hearing was timely filed. (Tr. 78-81, 84-87, 89-91.) On August 4, 2010, a hearing was held before Administrative Law Judge Karen A. Cornick ("ALJ"),

at which Claimant appeared and was represented by counsel. A vocational expert ("VE") also appeared and testified. (Tr. 43-72.) The ALJ issued a written decision on September 9, 2010, denying Claimant's request for benefits on the ground she is not disabled. (Tr. 28-37.) The Appeals Council denied Claimant's request for review on July 3, 2012. (Tr. 1-6.) Claimant then initiated this action seeking judicial review of the now final administrative decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act, 42 U.S.C. §§ 301 *et seq.* ("the Act"), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance," *Laws*, 368 F.2d at 642.

## DISABILITY EVALUATION PROCESS

"Disability" is defined under the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity

2

that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Regulations promulgated pursuant to the Act provide a five-step, sequential evaluation process that the ALJ must follow in evaluating a claim for SSI benefits:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the [applicable] duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 416.920(a)(4); *see also Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme

3

identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  20 C.F.R. § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." 20 C.F.R. § 416.920a(e)(3).

Where there are multiple impairments, the ALJ must also "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."  20 C.F.R. § 416.923.  If a medically severe combination of impairments is found, "the combined impact of the impairments will be considered throughout the disability determination process."  *Id.*

## FACTUAL HISTORY

### I. Social and Vocational History

At the time of the administrative hearing, Claimant was twenty-five, of average intelligence, and unemployed.  She had completed the eighth grade and taken some GED classes, but she had not fulfilled the requirements for obtaining her GED.  Claimant has never been married.  She has one child, a son who was three years old at the time of the hearing.  Both Claimant and her son live with Claimant's mother.  Upon the recommendation of her mental health provider, Claimant's son attends daycare on a full-time basis.  Claimant last worked in September 2008 as a greeter and stock clerk at Wal-Mart.  She also worked for a period of time as a cashier at a fast food restaurant.  In or before 2008, Claimant was diagnosed with bipolar II disorder.  She also has prior diagnoses of attention deficit hyperactivity disorder, depression, general anxiety disorder, scoliosis, and segmental dysfunction of the lumbar spine, as well as a history of cyclothymic disorder and oppositional defiant behavior.

4

## II. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant has not been engaged in substantial gainful employment since October 10, 2008, the date of her SSI application. (Tr. 30.) Next, the ALJ determined Claimant had the following severe impairments: attention deficit hyperactivity disorder, generalized anxiety, oppositional defiant behavior, bipolar disorder, scoliosis, and segmental dysfunction of the lumbar spine. (Tr. 30.) However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 30.) Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate restrictions of (i) her activities of daily living, (ii) social functioning; and (iii) her ability to maintain concentration, persistence and pace. (Tr. 31.) The ALJ also determined that Claimant has experienced one or two episodes of decompensation of extended duration. (Tr. 31.)

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work, "except that the claimant needs to be able to sit and stand as needed and can perform simple work with occasional interaction with other employees, supervisors, and the public." (Tr. 32.)

Based on the VE's testimony, the ALJ concluded at step four that Claimant did not have the RFC to perform the requirements of her past relevant work as a fast food restaurant cashier, stock clerk, and sales clerk. (Tr. 36.) Nonetheless, at step five, upon considering Claimant's age, limited education, work experience and RFC, the ALJ determined that Claimant is capable of

5

adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (Tr. 37.)

## DISCUSSION

Plaintiff contends that the ALJ erred by failing to give proper consideration to the opinions of two medical sources and by according more weight to the opinions of non-examining consultants than Claimant's treating providers. Plaintiff argues that the ALJ mischaracterized and inadequately analyzed the opinions of Susan Jones, a family nurse practitioner, and Jessica Hardin, a certified physician's assistant, both of whom treated Claimant at Coastal Carolina Neuropsychiatric Center. Ms. Jones stated that it is her opinion that Claimant is unable to cope with stress and is, therefore, unable to work, an opinion the ALJ rejected outright. (Tr. 34.) Ms. Hardin completed a Mental Impairment Questionnaire dated July 16, 2010, providing her opinions with regard to Claimant's functional abilities. Based on Claimant's functional limitations, Ms. Hardin opined that Claimant is unable to work eight hours per day, five days per week. Ms. Hardin's opinions were given little weight by the ALJ on the basis that her opinions are "tenuous and not supported by current, objective findings." (Tr. 35.)

An ALJ is obligated to consider all of the evidence available in an SSI claimant's case. "This includes, but is not limited to, objective medical evidence; other evidence from medical sources, including their opinions; statements by the individual and others about the impairment(s) and how it affects the individual's functioning; information from other 'non-medical sources' and decisions by other governmental and nongovernmental agencies about whether an individual is disabled or blind." SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006). Medical sources include not only physicians and other licensed practitioners designated as "acceptable medical

6

sources,"[1] but also other health care providers who are not "acceptable medical sources." 20 C.F.R. § 416.902; SSR 06-03p, 2006 WL 2329939, at *1.

"With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03p, 2006 WL 2329939, at *3. Information from these "other medical sources" cannot be used to establish the existence of a medically determinable impairment, but it should be considered in assessing the severity of an impairment or its functional effects. *Id.* ("Opinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.").

In determining the weight to be accorded "other medical sources," an ALJ should consider the following factors: (1) the length of time the source has known the individual and the frequency of their contact; (2) the consistency of the source's opinion with the other evidence; (3) the degree to which the source provides relevant evidence to support her opinion; (4) how well the source explains her opinion; (5) whether the source has an area of specialty or expertise related to the claimant's impairments; and (6) any other factors tending to support or refute the source's opinion. *Id.* at *4-5. Although "accepted medical sources" are considered the most qualified health care professionals, "an opinion from a medical source who is not an 'acceptable medical source'" may, in certain cases, "outweigh the opinion of an 'acceptable medical source,' including the medical

---

[1]The category of acceptable medical sources is limited to licensed physicians (medical or osteopathic), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R.§ 416.913(a).

opinion of a treating source." *Id.* at *5. Therefore, it is important that the ALJ not only *consider* these factors, but also *explain* "the weight given to opinions from these 'other sources' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR06-03p, 2006 WL 2329939, at *6.

The record in this case does not reflect whether the ALJ considered the appropriate factors in determining the weight to be accorded the opinions provided by Ms. Jones and Ms. Hardin. The ALJ gave no weight to Ms. Jones' opinion that Claimant is unable to cope with stress and is unable to work based on the following reasoning:

> Ms. Jones' assessment of the claimant's mental abilities is not supported by medically acceptable clinical laboratory findings and is inconsistent with other substantial evidence. Ms. Jones' opinion is even inconsistent with her own examination of the claimant. Specifically, Ms. Jones, on more than one examination, reported that the claimant had a good mood and was doing well. In fact, Ms. Jones even reported on November 3, 2008 that the claimant had no depression symptoms. Based on the foregoing, . . . there are specific and legitimate reasons to reject Ms. Jones' unreasonably restrictive assessment and therefore, it is given no weight.

(Tr. 34-35 (citations omitted).) In determining the weight to be given Ms. Jones' opinion, the ALJ did not indicate whether she considered the relevant factors, such as the duration and frequency of Ms. Jones' treatment of Claimant, Ms. Jones' experience or expertise in the treatment of bipolar disorder and depression, and the extent to which her opinion may be consistent with the records of the other treating medical sources. Moreover, the ALJ's rejection of Ms. Jones' opinion, based on treatment notes indicating that Claimant "had a good mood and was doing well" at certain times throughout her treatment fails to account for the fact that bipolar disorder, like many mental illnesses, is characterized by "'good days and bad days,' rapid fluctuations in mood,
8

or recurrent cycles of waxing and waning symptoms." *Phillips v. Astrue,* 413 F. App'x 878, 886 (7th Cir. 2010).

While the ALJ did not outright reject Ms. Hardin's opinions concerning Claimant's functional abilities and inability to work eight hours per day, five days per week, the ALJ accorded these opinions "little weight." With regard to these opinions, the ALJ stated simply:

> Ms Hardin's opinions are not well supported by objective medical findings or treating progress notes of record. Specifically, Ms. Hardin reported that the claimant takes prescribed medication; however, she did not report any side effects that may have implications for working. Ms. Hardin also reported that the claimant did not have reduced intellectual functioning. . . . Ms. Hardin's conclusions are tenuous and not supported by current, objective findings.

(Tr. 35 (citation omitted).) Other than this cursory explanation, the ALJ provided no reasoning to support her finding that Ms. Hardin's opinions should be accorded little weight. As with Ms. Jones, it is unclear from the record whether the ALJ considered the appropriate factors in determining the weight to be accorded Ms. Hardin's opinions. She did not explain why she found Ms. Hardin's opinions to be "tenuous." Nor did she state her bases for discrediting the opinions of these two medical sources who, collectively, treated Claimant and managed her medications for over two years under the supervision of Ashraf Mikhail, M.D., at Coastal Carolina Neuropsychiatric Center.

The ALJ's decision to accord significant weight to the two state agency review consultants, Dr. Souther and Dr. Warren, is similarly devoid of any explanation. No mention is made of their background or the fact that they did not examine Claimant. The ALJ identified no "objective medical findings" or "other substantial evidence of record" that are consistent with the consultants' mental assessments. (*See* Tr. 35.) This is particularly troubling given that the consultants' opinions could not have been supported by "current, objective findings." Unlike Ms. Hardin, who continued to see and treat Claimant on a regular basis until the time of the hearing,

9

Drs. Warren and Souther prepared their reports sixteen and twenty months, respectively, prior to the hearing. As such, neither of the state consultants had the benefit of the mental health treatment notes for the sixteen- to twenty-month period prior to the hearing.

In sum, the ALJ's decision fails to provide a meaningful explanation for the weight accorded to the various medical sources in this case. Absent further findings, the court is unable to determine whether the Commissioner's decision is supported by substantial evidence in the record and based on the proper legal standards. Accordingly, it is recommended that the case be remanded for further proceedings.

## **CONCLUSION**

For the foregoing reasons, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE #17] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #20] be DENIED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from receiving de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 4th day of February 2014.

*Kimberly A. Swank*
KIMBERLY A. SWANK
United States Magistrate Judge